## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

LEAH MELLAY ,
      Plaintiff,

      vs.

Brian Patten & Associates, American Family
Life Assurance Company of New York,
American Family Life Assurance Company of
Columbus, and Continental American Insurance
Company,

      Defendants.

Civil Action
No.




ELECTRONICALLY FILED



JURY TRIAL DEMANDED

### PLAINTIFF'S COMPLAINT

Pursuant to F. R Civ. P. 15(a)(1), Plaintiff, Leah Mellay ("Plaintiff"), by and through her undersigned counsel, files this Complaint against Brian Patten & Associates ("Defendant" or "BPA"), American Family Life Assurance Company of New York  ("Defendant" or "AFLAC New York"), American Family Life Assurance Company of Columbus ("Defendant" or "AFLAC Columbus"), Continental American Insurance Company ("Defendant" or "Continental") seeking all available relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Pennsylvania Human Relations Act, 43 PS 951-963 et seq. (the "PHRA"), the Fair Labor Standards Act of 1938, 29 U.S.C. §§201, *et seq*. ("FLSA") and related Pennsylvania state laws. The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. Pa. C.S.A. § 216(b) and 28 U.S.C. § 1331.

2.      This Court has supplemental jurisdiction under 28 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3.  Venue in this Court is proper pursuant to 28 U.C. 1391. Plaintiff resides in this judicial district, the events giving rise to Plaintiff's claims occurred within this district, and the Defendants do business in this district.

## PARTIES

5.      Plaintiff, Leah Mellay ("Plaintiff" or "Mellay"), is an adult individual who resides in Cranberry Township, Pennsylvania.

6.      Brian Patten & Associates ("Defendant" or "BPA") is a Pennsylvania corporation and has its principal place of business at 120 Marguerite Drive, Cranberry Township PA 16066, and operates throughout the United States.

7.      American Family Life Assurance Company of New York  ("Defendant" or "AFLAC New York")  has its principal place of business at 22 Corporate Woods Blvd. Albany, NY 12211, and operates throughout the United States.

8.      American Family Life Assurance Company of Columbus ("Defendant" or "AFLAC Columbus") has its principal place of business at 1932 Wynnton Road Columbus, GA 31999, and operates throughout the United States.

9.      Continental American Insurance Company ("Defendant" or "Continental") has its principal place of business at 2801 Devine Street Columbia, SC 29205 and operates throughout the United States.

10.     AFLAC New York, AFLAC Columbus, and Continental are collectively referred to as "AFLAC Defendants" herein.

11.     Defendants are engaged in the financial services business which includes selling voluntary benefits such as life insurance products to consumers through its agencies such as BPA.

12.     Defendants employed Plaintiff and other individuals engaged in commerce or in the production of good for commerce and/or handling, selling, or otherwise working on goods or

materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206- 207.

13. The Defendants' business models are, in large part, based on selling voluntary benefits such as life insurance products to consumers as well as recruiting sales agents.

14. The Defendants' annual gross volume of business exceeds $500,000.00.

15. The Defendants are not independently owned and controlled local enterprises within the meaning of 29 U.S.C. § 207(b)(3).

## BACKGROUND FACTS

16. Plaintiff was employed by the Defendants from November 2009 through June 2023, approximately, as an insurance producer, selling life insurance products on behalf of the Defendants.

17. From November 2009 through June 2023, approximately, Plaintiff held various positions of increasing responsibility including but not limited to Sales Coordinator, District Sales Coordinator, Benefit Counselor, Agent, and Regional Sales Coordinator while reporting to Brian Patten, owner and CEO of Defendant, BPA, as well as other supervisors on behalf of Defendants.

18. Throughout all of her positions noted above, Plaintiff was paid on a commission basis.

19. As a prerequisite to employment, the Defendants required Plaintiff to sign multiple Sales Coordinate Contract(s) for each of Plaintiff's aforementioned agent positions.

20. For example, Defendants required Plaintiff to enter into Sales Coordinate Contracts with AFLAC Defendants ("Employment Contracts") similar to those attached hereto as **Exhibit A.**

21. The Employment Contracts include "Paragraph Two: Relationship", stating as follows:

(a) Independent Contractor. The relationship of Sales Coordinator to [CAIC] shall be and shall continue to be that of an independent contractor rather than employer/employee, and nothing contained herein shall be construed as creating any other relationship.

3

(b) Relationship to Others. It is understood and agreed that Sales Coordinator relationship with all other sales coordinators, associates, and agents shall be that of an independent contractor. Sales Coordinator shall at all times respect the independent contractor nature of Sales Coordinator's duties hereunder.

### A. **The Hiring Process**

22.   On or about October 2009, Plaintiff interviewed with representatives of Defendants for a sales position with the Defendants.

23.   During the interview, Defendants' representatives represented that, as an agent for Defendants, Plaintiff's compensation would be comprised of multiple income streams, including but not limited to the following:

    a)   Commissions based on volume and retention of volunatary benefits including life insurance product sales;
    b)   Commissions based on volume and retention of new agent recruits;
    c)   Bonuses; and,
    d)   Customer renewals of previously sold voluntary benefits including life insurance products which continue for a certain period of time depending on the agents' tenure.

24.   Since, various representatives on behalf of the Defendants have reiterated the same compensation structure to Plaintiff on multiple occasions.

25.   Immediately following the aforementioned interview, Defendants offered Plaintiff a position as a Benefit Counselor/Agent.

26.   In reliance on the above referenced representations and promises, Plaintiff accepted the job offer and, in reliance thereof, obtained her state license on or about October 2009.

27.   Plaintiff  exhausted her administrative remedies at the Equal Employment Opportunity Commission and Pennsylvania Human Rights Commission by initially filing her complaints with the EEOC and PHRC and filing this Complaint within 90 days following her receipt of EEOC's Right to Sue Notice.

### B. **Plaintiff's Employment**

28.   On or about November 2009, Plaintiff began working as an Agent for the Defendants at their

4

office located at 120 Marguerite Drive, Cranberry Township, Pennsylvania, 16066 ("Cranberry Office").

29. Patten and other sales agents of the Defendants also worked out of the Cranberry Office.

30. From approximately November 2009 through June 2023, Plaintiff received sales commissions and renewal commissions (from prior sales) on a monthly basis.

31. Upon hire, the Defendants required Plaintiff to attend training for approximately four weeks.

32. Prior to entering into the Employment Contracts, Defendants promised Plaintiff that she would be compensated for the mandatory training.

33. The mandatory training lasted several weeks and Plaintiff was required to work more than eight hours per day, six or more days per week, and over forty (40) hours a week while training.

34. During training, the Defendants required Plaintiff to work on-site and attend training courses in its offices. Some of those days lasted in excess of 12 hours.

35. Plaintiff was not paid for her time spent training.

36. Plaintiff is unable to ascertain her actual hourly rate during training because she never received a single paystub that reflected her applicable hourly rate, total hours worked, gross wages earned, or net wages earned; however, the rate of pay for Plaintiff was solely set by the Defendants.

37. For all times relevant herein, the Defendants wrongfully classified Plaintiff as an independent contractor.

38. More specifically, the Defendants controlled practically all aspects of Plaintiff's work, including but not limited to the following particulars:

    a) Control over the manner in which Plaintiff's work was performed;
    b) Control over Plaintiff's work schedule, including but not limited to certain days of the week, times, and amount of hours worked;
    c) Control over Plaintiff's work schedule, requiring in-office meetings at certain times and days of the week;
    d) Control over Plaintiff's work schedule, requiring in-office sales calls at certain times and days of the week;
    e) Control over Plaintiff's work schedule, requiring off-site sales meetings with potential buyers to occur at certain times and days of the week;
    f) Control over Plaintiff's work schedule, requiring off-site team meetings, often involving significant travel and overnights;

g)  Control over Plaintiff's work location;
h)  Control over Plaintiff's work performance;
i)  Control over the types and/or brands of products Plaintiff could sell;
j)  Requiring Plaintiff to complete the Defendants' training and orientation programs;
k)  Requiring Plaintiff to comply with the Defendants' written policies and guidelines;
l)  Paying Plaintiff on a scheduled basis;
m) Discouraging Plaintiff from holding other jobs; and,
n)  Controlling Plaintiff's work in all other respects.

39.    Plaintiff performed duties that were integral to the Defendants' business.

40.    The Defendants controlled the method and means of Plaintiff's work including that of Plaintiffs and not merely the result of the work.

41.    Plaintiff was not paid minimum wage or overtime pay.

42.    Plaintiff did not receive regular meal and rest breaks and was not paid for missed breaks.

43.    Plaintiff was required to pay her own expenses incurred in the performance of her job.

### C. The Defendants' Hostile Work Environment

44.    Soon after starting to work for the Defendants, Plaintiff experienced a highly charged misogynistic, aggressive, unethical, hostile, and toxic work environment, including but not limited to the following particulars:

a)  The majority of sales agents working for the Defendants were male;
b)  The majority of sales agents working for the Defendants were under 40 years of age;
c)  The majority of  the business leaders on behalf of the Defendants were male;
d)  The majority of the business leaders on behalf of the Defendants were under 40 years of age;
e)  Plaintiff's supervisors openly and frequently abused alcohol and drugs during work hours, at the office, and/or work events;
f)  Plaintiff's supervisors, including but not limited to Patten, would frequently discuss and publicize their illicit drug and alcohol abuse;
g)  Plaintiff's supervisors, including but not limited to Patten, frequently hosted work events at bars, nightclubs, and strip clubs where excessive alcohol and drugs were used, along with inappropriate and offensive sexualized language, behavior, and other degrading, misogynistic conduct;
h)  Plaintiff's supervisors, including but not limited to Patten intentionally used lies, misrepresentations, threats, blackmail, bullying, ridicule, and intimidation tactics to

"motivate", manipulate, or otherwise take advantage of their subordinates, to the Defendants' benefit;

i)   Plaintiff's supervisors, including but not limited to Patten, intentionally used lies, misrepresentations, threats, blackmail, and intimidation tactics to discourage and/or prevent agents from voicing complaints about their and/or other males' use of unethical and fraudulent business practices and/or the corporate culture and work environment, generally speaking;

j)   Plaintiff's supervisors, including but not limited to Patten, intentionally used lies, misrepresentations, threats, blackmail, and intimidation tactics to discourage and/or prevent agents from asserting their legal rights;

k)   Plaintiff's supervisors, including but not limited to Patten, constantly made lewd, sexualized, demoralizing, vile and otherwise offensive comments about women, many of whom were their subordinates, coworkers, spouses, girlfriends, and/or partners of said male leaders;

l)   Plaintiff's supervisors, including but not limited to Patten, openly and frequently engaged in extramarital affairs and sexual relationships, often times with female subordinates, and openly discussing same in the workplace;

m)   Promotion of males over females who performed at the same level if not higher than said males;

n)   Paying males higher wages than females including but not limited to sales commissions, bonuses, residual income, and other fringe benefits such as competitions and contests;

o)   Fixing, rigging, and/or otherwise manipulating sales contests and competitions so that certain male leaders would win over otherwise eligible female agents;

p)   Plaintiff's supervisors, including but not limited to Patten, constantly made insulting, demoralizing, and otherwise offensive comments about Plaintiff's religion;

q)   Frequent and continuous disregard for the applicable laws, regulations, and/or Defendants' policies, to the benefit of the Defendants;

r)   Demotion of females who performed their duties in accordance with applicable laws, regulations, and/or the Defendants' policies;

s)   Plaintiff's supervisors, including but not limited to Patten, would recruit, hire and/or seek to hire disproportionate amount of unqualified male agents;

t)   Plaintiff's supervisors, including but not limited to Patten, facilitated, encouraged and promoted males, particularly those males who engaged in unethical and fraudulent business practices, including but not limited to the following:

   i.   Forging Defendants' customers' signatures,

   ii.   Billing and charging Defendants' customers for products and services without said customers' consent;

   iii.   Intentionally lying and/or otherwise misleading Defendants' customers to fraudulently induce said customers' business;

   iv.   Targeting and/or preying upon Defendants' customers and/or potential customers including but not limited to the elderly, uneducated, and/or unsophisticated to manipulate and mislead;

   v.   Plaintiff's supervisors, including but not limited to Patten, taking affirmative steps to identify and punish subordinate agents such as Plaintiff who reported and/or otherwise spoke up against the aforementioned misconduct;

   vi.   Plaintiff's supervisors, including but not limited to Patten, encouraging, condoning, or otherwise complicit with the aforementioned misconduct on behalf of other males;

7

> vii. Other inappropriate, offensive, non-compliant, or otherwise unlawful behavior on behalf of the Defendants which contributed to the Defendants' hostile work environment.

### D. Defendants' Treatment of Plaintiff

45.     During Plaintiff's employment with Defendants,  she was discriminated against based on her religion, age, and sex.

46.     Despite Plaintiff's high performance, for example, Respondents promoted younger, less qualified males over Plaintiff.

47.     Similarly, Defendants would provide Plaintiff's male peers with more lucrative business accounts over Plaintiff.

48.     Plaintiff's male superiors often made offensive and demeaning comments about Plaintiff's religion and sex.

49.     For example, Plaintiff's male superiors would openly call her a "bitch" or "cunt".

50.     During an offsite work event, a male superior asked Plaintiff and a female coworker which of them would "flash their tits."

51.     During her career with Defendants, Plaintiff was subjected to a hostile and toxic work environment.

52.     The Defendants encouraged, participated in, or were otherwise complicit with regard to the aforementioned hostile workplace environment and corporate culture, including but not limited to the following particulars:

    a.  Firsthand observations of the widespread conduct at work and work events as noted above;

    b.  Female agents complained to leaders about the hostile workplace and misogynistic culture;

    c.  Defendants failed to properly investigate said complaints;

    d.  Frequent in person visits to BPA, and the Cranberry Office Defendants' business leaders;

 e. Frequent virtual calls and meetings with business leaders and other agents via phone and/or video;

 f. Frequent offsite work meetings and other work-related events attended by business leaders and other BPA agents;

 g. Promotion of male agents, despite their low customer retention rate;

 h. Promotion of male agents, despite their known unethical and fraudulent business practices; and,

 i. Other observations and/or experiences of the Defendants' aforementioned hostile and toxic work environment.

53. During the course of her career with Defendants, Plaintiff reported Defendants' discriminatory, unethical, and fraudulent conduct to her supervisors on multiple occasions.

54. For example, Plaintiff reported systemic use of discriminatory, unethical, and fraudulent business practices by the Defendants' sales coordinators, including but not limited to intentional and fraudulent misrepresentations frequently made to potential customers with the intention to induce said clients to purchase the Defendants' voluntary benefits and life insurance products.

55. When Plaintiff would report Defendants' discriminatory, unethical, and fraudulent conduct to her superiors, Defendants would retaliate against her through various means including but not limited to discouraging Plaintiff from speaking up by making intimidating and belittling comments to Plaintiff such as Plaintiff "needed to see the bigger picture", Plaintiff "needs to take the high road", and Plaintiff's place was "at home in the kitchen", and pass Plaintiff over for promotions and other business opportunities despite Plaintiff's high performance.

56. During her career with Defendants, Defendants failed to provide Plaintiff with any safe channels of reporting misconduct noted above including but not limited to discrimination, harassment, retaliation, and unethical business practices.

57. For example, Defendants' failed to provide any Human Resources support or contact information to Plaintiff.

58. Following Plaintiff's reports, on or about May 2023, Defendants informed Plaintiff that

9

she was being put on an unpaid suspension through mid-June 2023 as a result of performing work that she was directed to perform, per one of her supervisors, Matt Kirkwood.

59.     Kirkwood (and other male coworkers) were not disciplined in any manner for engaging in the same conduct and worse.

60.     When Plaintiff attempted to return to work in mid-June, 2023, Brian Patten terminated Plaintiff without explanation or justification.

61.     Since, various representatives of the Defendants have defamed Plaintiff by spreading lies about Plaintiff including but not limited to Plaintiff engaging in unethical business practices to other business associates in the insurance industry.

62.     For the aforementioned reasons, Plaintiff was retaliated against by Defendants.

63.     As a result of Plaintiff's involuntary termination, Plaintiff lost wages and benefits, in addition to suffering extreme emotional distress, embarrassment, loss of professional reputation, and humiliation.

### COUNT I
*Violation of the Fair Labor Standards Act* 29 U.S.C. § 201, et seq.
**LEAH MELLAY v. Brian Patten & Associates, American Family Life Assurance Company of New York, American Family Life Assurance Company of Columbus, and Continental American Insurance Company**

64.     All previous paragraphs ae incorporated as though fully set forth herein.

65.     At all times relevant hereto, the Defendants were Plaintiff's "employer" under the FLSA, 29 U.S.C. 203(d), subject to the provisions of 29 U.S.C. §§ 201, et seq.; 29 C.F.R. § 791.2.

66.     At all times relevant hereto, Plaintiff was an "employee" of the Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

67.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

68.     Plaintiff is not exempt from the applicable provisions of the FLSA.

69.     At all times relevant hereto, the Defendants "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

70.     The FLSA requires an employer to pay all employees the federally mandated overtime premium rate of one and one-half times their regular pay for every hour worked in excess of 40 hours per workweek. 29 U.S.C. § 207.

71.     Plaintiff regularly worked over 40 hours per week while employed by the Defendants.

72.     The Defendants violated the FLSA by failing to pay Plaintiff and other employees overtime compensation, at the rate of one and one-half times their regular hourly rate, for all hours worked in excess of 40 per workweek.

73.     The Defendants violated the FLSA by failing to pay Plaintiff and other employees proper minimum wage for all hours worked up to 40 per week.

74.     The Defendants violated the FLSA by failing to pay Plaintiff and other employees for time spent in mandatory training.

75.     The Defendants violated the FLSA by failing to pay for Plaintiff and other employees' missed meals and rest breaks.

76.     The Defendants violated the FLSA by requiring Plaintiff to pay her own work-related expenses.

77.     The Defendants violated the FLSA by subjecting employees to "chargebacks" by illegally collecting back commissions from agents' (including Plaintiff) earned wages if an insurance policy was later cancelled by the customer.

78.     The Defendants' violations of the FLSA were willful, with knowledge or reckless disregard of the statutory overtime requirements, as demonstrated by their failure to pay Plaintiff an overtime premium for all hours worked in excess of 40 per week.

79.     As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against the Defendants including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

## COUNT II

### *Violation of 29 C.F.R. § 516, et seq.*
### *Failure to Maintain Required Records*
### LEAH MELLAY v. Brian Patten & Associates, American Family Life Assurance Company of New York, American Family Life Assurance Company of Columbus, and Continental American Insurance Company

80.     All previous paragraphs are incorporated as though fully set forth herein.

81.     29 C.F.R. § 516.1 provides "every employer subject to any provision of the Fair Labor Standard Act" to maintain employee records.

82.     FLSA requires all employers to keep all payroll records and time records for at least 3 years, including but not limited to all basic timecards and daily starting/stopping times of individual employees. 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

83.     As Plaintiff's employer, the Corporate Defendants were subject to the FLSA's record keeping requirements.

84.     The Defendants were obligated to maintain and preserve payroll or other records containing, without limitations, the total hours worked by each employee each workday and total hours worked by each employee each workweek. 29 C.F.R. § 516.2.Upon information and belief, the Corporate Defendants maintain corporate policies and/or practices of evading pay for their hourly employees by altering their time records and pay periods and failing to accurately record Plaintiff's hours worked.

85.     The Defendants failed to maintain and preserve accurate timesheets and payroll records as required by 29 C.F.R. § 516.2.

86.     When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 1192 (1946) is controlling, and provides as follows:

> [w]here the employer's records are inaccurate or inadequate … an employee had carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the mount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with

evidence of the precise amount of work performed or with evidence to negative reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

87.     The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. When damage are awarded, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had they kept records in accordance with… the Act." *Id.*

88.     As a result of the Defendant's record keeping violations, Plaintiff seeks a declaratory judgment and order that the Anderson burden-shifting framework applies in this case, along with all other relief just and appropriate under the circumstances.

## COUNT III
### *Violation of the Pennsylvania Minimum Wage Act*
**LEAH MELLAY v. Brian Patten & Associates, American Family Life Assurance Company of New York, American Family Life Assurance Company of Columbus, and Continental American Insurance Company**

89.     All previous paragraphs are incorporated s though fully set forth therein.

90.     The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered employees be compensated at a rate not less than the standard rate.

91.     The Pennsylvania Minimum Wage Act of 1968 requires that covered employees be compensated for all hours worked in excess of forty per week at a rate of at least one and one- half time the regular rate at which he or she is employed. See 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41.

92.     As described above, Plaintiff was subjected to the Defendants' practice of not paying employees for all hours worked, including overtime.

93.     Plaintiff was not properly compensated for hours worked at a rate equal to or above

Pennsylvania's minimum wage.

94.     Additionally, Plaintiff was not properly compensated for hours worked in excess of 40 ours per workweek.

95.     The Defendants failed to pay Plaintiff for time spent in mandatory training.

96.     The Defendants failed to pay Plaintiff for missed meals and rest breaks.

97.     The Defendants illegally required employees to pay their own work- related expenses.

98.     The Defendants illegally subjected employees to "chargebacks", by collecting back commissions from agents earned wages if a policy was later cancelled by the customer.

99.     Plaintiff was a non-exempt employee.

100.    In violating the PMWA, the Defendants acted willfully and with reckless disregard of the applicable provisions to the detriment of Plaintiff.

101.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against the Defendants including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.


**COUNT IV**
*Violation of the Pennsylvania Wage Payment and Collection Law*
**LEAH MELLAY v. Brian Patten & Associates, American Family Life Assurance Company of New York, American Family Life Assurance Company of Columbus, and Continental American Insurance Company**

102.    All previous paragraphs are incorporated as though fully set forth therein.

103.    The Pennsylvania Wage Payment and Collection Law ("WPCL") requires that an employer pay all wages due to its employees. 43 P.S. § 260.3.

104.    The Defendants have intentionally failed to pay wages due to Plaintiff for the following:

a)  Purposefully failing to pay employees for the true and correct number of hours they have worked; and,

b)  Failing to pay employees minimum wage and all other wages due.

105.    Pursuant to 43 P.S. 260.9 and 260.10, employers such as the Defendants who intentionally fail to pay an employee wages in conformance with the WPCL shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

106.    The Defendants do not have written authorization from Plaintiff to withhold, divert, or deduct any portion of her wages that concern this action.

107.    The Defendants violated Pennsylvania law by failing to pay Plaintiff for all compensable time and by failing to pay Plaintiff for work time, including but not limited to overtime.

108.    Pursuant to 43 P.S. 260.9 and 260.10, Plaintiff's employer would also include Brian Patten and BPA as agents and/or officers on behalf of the Defendants.

109.    Upon information and belief, Brian Patten and BPA were involved in the decision to withhold Plaintiff's wages.

110.    The Defendants failed to pay Plaintiff for training.

111.    The Defendants failed to pay Plaintiff for missed meals and rest breaks.

112.    The Defendants illegally required employees to pay their own work-related expenses.

113.    The Defendants illegally subjected employees to "chargebacks", by collecting back commissions from agents earned wages if a policy was later cancelled by the customer.

114.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against the Defendants including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

### **COUNT V**
### *Unjust Enrichment*
### **LEAH MELLAY v. Brian Patten & Associates, American Family Life Assurance Company of New York, American Family Life Assurance Company of Columbus, and Continental American Insurance Company**

115.    All previous paragraphs are incorporated as though fully set forth herein.

116.   The Defendants have received and benefitted from the uncompensated labor of Plaintiff such that to retain such benefit without compensation would be inequitable and unjustly enrich the Defendants.

117.   At all times relevant herein, the Defendants devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing work from Plaintiff and other agents without paying total compensation and overtime for hours worked.

118.   Contrary to good faith and fair dealing, the Defendants induced Plaintiff to performed work while failing to pay her overtime and/or minimum wage compensation for all hours worked as required by law.

119.   By reason of having secured the work and efforts of Plaintiff without paying overtime and full compensation as required by law, the Defendants enjoyed reduced labor costs and consequently additional earnings and profit to their benefit.

120.   Therefore, Plaintiff is entitled to judgment in an amount equal to the benefits unjustly retained by the Defendants.

### COUNT VI
### *Breach of Contract*
### LEAH MELLAY v. Brian Patten & Associates, American Family Life Assurance Company of New York, American Family Life Assurance Company of Columbus, and Continental American Insurance Company

121.   All previous paragraphs are incorporated as though fully set forth herein.

122.   As noted in more detail above, the Defendants promised that Plaintiff would act and be treated as an independent contractor in her work on behalf of Defendants.

123.   As described more fully above, Defendants failed to treat Plaintiff as an independent contractor.

124.   As a result of the foregoing breach, Plaintiff was injured and seeks appropriate relief against the Defendants including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

125.    In the alternative, Plaintiff requests a declaration from this Court that the Employment Contracts are rescinded or otherwise invalidated.

## COUNT VII
### *Declaratory Relief – Rescission of Contracts*
### LEAH MELLAY v. Brian Patten & Associates, American Family Life Assurance Company of New York, American Family Life Assurance Company of Columbus, and Continental American Insurance Company

126.    All previous paragraphs are incorporated as though fully set forth herein.

127.    Prior to working for the Defendants, Plaintiff was required to sign Employment Contracts similar if not identical to that are attached hereto as Exhibit A.

128.    The agreement specifically states, inter alia, that "the relationship of Sales Coordinator to [CAIC] shall be and shall continue to be that of an independent contractor rather than employer/employee" and "It is understood and agreed that Sales Coordinator relationship with all other sales coordinators, associates, and agents shall be that of an independent contractor." See Exhibit A.

129.    The representation of Plaintiff's relationship to Defendants as an independent contractor rather than employer/employee, inter alia, is a material element of the agreement.

130.    The representation of Plaintiff's relationship with other sales coordinators, associates, and agents as an independent contractor, inter alia, is a material element of the agreement.

131.    These statements, inter alia, were made falsely by Defendants, who have knowledge of the falsity as they regulate and control their agents' schedules, requiring off-site sales meetings with potential buyers to occur at certain times and days of the week as well as in-office sales meetings, team meetings, and calls to occur at certain times and days of the week.

132.    The Defendants intentionally misled the Plaintiff in order to fraudulently induce her to accept a position with  Defendants and enter into said Agreements.

133.    The Defendants intentionally defrauded the Plaintiff regarding her work hours, schedules, professional development, and amount of pay to entice her to work for less money than she is entitled to.

134.    Plaintiff justifiably relied on these misrepresentations when accepting a position with the Defendants and signing her Employment Contracts.

135.    The resulting injury is directly connected to Plaintiff being mischaracterized as an independent contractor, rather than employee, specifically in relation to being forced to work certain schedules, attend meetings at certain times and places, and being required to account for their time to Defendants.

136.    An actual dispute and controversy has arisen between the Plaintiff and Defendants regarding whether or not the Employment Contracts and the provisions set forth therein are enforceable.

137.    For the reasons set forth above, Plaintiff seeks a declaratory judgment rescinding the Employment Agreements as they were induced by fraud.

138.    A judicial determination is necessary and appropriate at this time to determine the respective rights of Plaintiff and Defendants.

139.    Plaintiff requests a declaration from this Court that the Employment Contracts are rescinded.

### COUNT VIII
*Violation of Title VII – Discrimination and Retaliation on the Basis of Sex*
**LEAH MELLAY v. Brian Patten & Associates, American Family Life Assurance Company of New York, American Family Life Assurance Company of Columbus, and Continental American Insurance Company**

140.    Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

141.    Plaintiff is a member of a protected class on the basis of sex, i.e. female.

142.    Plaintiff is a member of a protected class on the basis of religion, i.e. Jewish.

143.    Plaintiff is a member of a protected class on the basis of age, i.e. over 40 years old.

144.    Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendants' legitimate business expectations.

145.    Defendants discriminated against Plaintiff, as described above, including but not limited to harassing her, subjecting her to a hostile work environment, denying her promotions and firing her.

146.    Defendants also retaliated against Plaintiff as described above.

147.    Defendants' actions were taken with a willful and wanton disregard of Plaintiff's rights under Title VII.

148.    As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## COUNT IX
### *Violation of Title VII – Discrimination and Retaliation on the Basis of Age*
### LEAH MELLAY v. Brian Patten & Associates, American Family Life Assurance Company of New York, American Family Life Assurance Company of Columbus, and Continental American Insurance Company

149.    Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

150.    Plaintiff is a member of a protected class on the basis of age, i.e. over 40 years old.

151.    Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendants' legitimate business expectations.

152.    Defendants discriminated against Plaintiff, as described above, including but not limited to harassing her, subjecting her to a hostile work environment, denying her promotions and firing her.

153.    Defendants also retaliated against Plaintiff as described above.

154.    Defendants' actions were taken with a willful and wanton disregard of Plaintiff's rights under Title VII.

155.     As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

### COUNT X
*Violation of Title VII – Discrimination and Retaliation on the Basis of Religion*
**LEAH MELLAY v. Brian Patten & Associates, American Family Life Assurance Company of New York, American Family Life Assurance Company of Columbus, and Continental American Insurance Company**

156.     Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

157.     Plaintiff is a member of a protected class on the basis of religion, i.e. Jewish.

158.     Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendants' legitimate business expectations.

159.     Defendants discriminated against Plaintiff, as described above, including but not limited to harassing her, subjecting her to a hostile work environment, denying her promotions and firing her.

160.     Defendants also retaliated against Plaintiff as described above.

161.     Defendants' actions were taken with a willful and wanton disregard of Plaintiff's rights under Title VII.

162.     As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

### RELIEF REQUESTED

WHEREFORE, Plaintiff Leah Mellay requests an order for relief as follows:

A.  An order rescinding the Employment Contracts or portions thereof;

B.  Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

C.  Liquidated damages to the fullest extent permitted by the law;

D.  Damages for lost wages, emotional distress, pain and suffering to the fullest extent permitted by the law;

E.  Punitive damages to the fullest extent permitted by law;

F.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and,

G.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff, Leah Mellay, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled case.


Date: July 26, 2024                                   Respectfully submitted,

                                                      */s/ Amy N. Williamson*
                                                      Amy N. Williamson, Esq.
                                                      Williamson Law LLC
                                                      Law and Finance
                                                      429 Fourth Avenue, Suite 300
                                                      Pittsburgh PA 15219
                                                      412-600-8862
                                                      awilliamson@awilliamsonlaw.com